ELSTON *v.* WILBORN.

4-7568                                      186 S. W. 2d 662

Opinion delivered March 26, 1945.

*Ross Mathis,* for appellant.

*W. J. Dungan,* for appellee.

McFADDIN, J.   This appeal involves a dispute between rival factions of a Negro Congregation in Cotton Plant, Arkansas.   Many questions are mentioned by appellants, such as the calculation and disposition of the

tithe, the form of church government, the right of the pastor to "disfellowship" a member, and other issues of doctrine. Judicial tribunals must leave such matters to ecclesiastical writers. In the United States of America, where Church and State are separate, the courts have steadily asserted their refusal to determine any contro-versy relating purely to ecclesiastical or spiritual fea-tures of a church or religious society. The courts inter-vene only to protect the temporalities of such bodies, and to determine property rights. 45 Am. Juris. 768.

The decree of the chancery court held that the church here involved—i. e., the Church of God in Christ at Cotton Plant—was a *congregational church*; and in that one finding both sides seemed to agree.

So far as we know, churches in the United States may be classified, as regards the form of church government, into four groups: papal, episcopal, presbyterial, and con-gregational. See Encyclopedia Britannica 14th Ed.: vol. 17, p. 194 *et seq.*; vol. 8, p. 659; vol. 18, p. 440 *et seq.*; vol. 6, p. 246 *et seq.*; see, also, Encyclopedia Americana 1937 Ed.: vol. 21, p. 251; vol. 10, p. 429; vol. 22, p. 540; and vol. 7, p. 501. This is a controversy between factions in a *congregational group,* and nothing herein relates to reli-gious societies or churches governed by any one of the other forms of church government. In congregational groups the affairs are determined by the vote of the ma-jority of the members. The rule is stated in 45 Am. Juris. 764:

"Thus, when a church, strictly congregational or independent in its organization, is governed solely within itself, either by majority of its membership or by such other local organism as it may have instituted for the purpose of ecclesiastical government, and holds property either by way of purchase or donation, with no other specific trust attached to it than that it is for the use of the church, the numerical majority of the membership of the church may ordinarily control the right to the use and title of such property. The principle of majority control is, however, limited to independent or congregational

societies, and is not to be extended to societies belonging to an ecclesiastical system.''

For cases in our own court involving congregational church government, see *Monk* v. *Little,* 122 Ark. 7, 182 S. W. 511, and *Young* v. *Knox,* 165 Ark. 129, 263 S. W. 52. With the above as background information, we proceed to this case.

The appellees are Harvey Lee Wilborn, James Prator, and Otis Hampton. They filed this action in ejectment in December, 1941, claiming to be the trustees of the Church of God in Christ at Cotton Plant, and, as such trustees, to be the owners and entitled to possession of the church building and property. These plaintiffs alleged that the defendants wrongfully withheld possession. Defendants (appellants here) were Jesse Elston, Johel Leaks, and J. E. Bowe. There were other defendants, but they are not interested in this appeal. The defendants filed answer and cross-complaint, and moved to transfer the case to equity, which was done; and issue was joined on which group—plaintiffs or defendants—represented the majority faction in the church.

The chancery court, after hearing the evidence, made an order on June 13, 1944, calling an election to determine the majority faction. Commissioners were appointed to hold the election, and it was set for August 13, 1944, at the church building; and only those persons who were members of the Church of God in Christ at Cotton Plant on June 1, 1941, were eligible to vote in the election. The purpose of the election was to name three trustees of the congregation. On September 11, 1944, the report of the election was received by the court, and on that report the chancery court entered a final decree holding the appellees to have been duly elected, and awarded the appellees, as such trustees, the church property because of the said election. From that decree there is this appeal.

The issue to be tried in the chancery court was whether the plaintiffs, at the time of filing the suit, were the duly elected trustees of the church. If they were, they had the right to maintain this suit (§ 11369, Pope's

380

Digest). Otherwise the decree should have been against them. The determination of the question should have been on the basis of the facts as they existed prior to the filing of this suit. In 1 Am. Juris. 451 the rule is stated:

"A cause of action must exist and be complete before an action can be commenced; the subsequent occurrence of a material fact will not avail in maintaining it. The rights and liabilities of the parties—that is, the rights to an action or to judgment or relief—depend upon the facts as they existed at the time of the commencement of the action, and not at the time of the trial."

To the same effect, see *Horner* v. *Hanks et al.*, 22 Ark. 572, where this court said:

"The law is expressly written, that the right of a plaintiff must be adjudicated upon as it existed at the time of the filing of his bill. Adams Eq. 413, *Barfield* v. *Kelly*, 4 Russ. 359." See, also, *Shreve Chair Co.* v. *Manufacturers Furniture Co.*, 168 Ark. 756, 271 S. W. 954; *Mazaika* v. *Krauczunas*, 229 Pa. 47, 77 At. 1102, 31 L. R. A., N. S. 686; *Judkins* v. *Tuller*, 277 Mass. 247, 178 N. E. 540. In 1 C. J. S. 1389 *et seq.* the same rule is stated, with the amendment that in some equity cases, the filing of supplemental pleadings will allow proof of supplemental facts. But, even so, in the case here there were no such supplemental pleadings filed. The only pleadings were the original complaint and the answer and cross-complaint.

The chancery court called an election to vote for three trustees, and at that election the appellees received a majority. But that election could not determine the question, because it was held nearly three years after the suit had been filed. Solely on the result of the election, the chancery court decided for the appellees.

The case of *Mazaika* v. *Krauczunas*, 229 Pa. 47, 77 At. 1102, 31 L. R. A., N. S. 686, is the nearest case in point that we have been able to find. There, as here, a dispute arose as to who was the trustee of the Congregation when the suit was filed, and the chancellor called an

election, and decided the case on the result of that election. The Supreme Court of Pennsylvania said: :

"Instead of meeting the issues raised by the pleadings, pursuant to an agreement entered into between the parties, the chancellor proceeded to hold a new election, to determine whom the majority preferred to have act as trustee of the title. . . . Here was a clear abdication of judicial function and authority. . . . It is the proper function of a chancellor to resolve such doubtful questions in the light of the evidence, not to avoid them by reaching a solution of the controversy through methods for which there is no legal warrant. . . . The decree entered in the case rests exclusively upon the result derived by the chancellor from the election held before him. Not only had the election no relation to the congregational meeting, but it was not ordered by the congregation, . . . The case must go back, to be proceeded with sec. reg., the contending parties to be allowed to introduce such testimony as they can touching the issues raised under the pleadings. From that testimony let the facts be found, and then, should an appeal to this court follow, we will be in a position to make final ruling, but not until then." ·

We think the reasoning of the Pennsylvania case is sound, and we follow it. We do not mean that an election can never be called. If—for instance—a complaint should be filed stating that by force, threats, etc., the desire of the majority could not be ascertained, then a court could properly decree a clear election—not to decide the result of a pending case, but as granting the relief prayed, i. e., a clear election. But that is not the case before us. Here the chancery court entered a decree based solely on the result of the election.

It follows, therefore, that the decree is reversed and the cause remanded for a trial and decree on the question, whether the plaintiffs, at the time they filed the ejectment suit, were the duly elected trustees of the church, and also for the court to determine whether there is any merit to the lien claimed by appellant Bowe in the cross-complaint.