JOHN E. YARBRO v. JOSEPH A. GENTRY

4684                                      433 S.W. 2d 381

Opinion Delivered November 11, 1968

*Van Albertson* and *John W. Cloer* for appellant.

*M. D. Anglin* for appellee.

J. FRED JONES, Justice.   This is an appeal from the Madison County Chancery Court and it is difficult to determine from the record before us, exactly what this case is about.   Apparently the pleadings, exhibits, testimony and arguments in this case, were as confusing to the chancellor as they are to us.

The record reflects that on June 17, 1964, the appellee, Gentry, filed a complaint in the Madison County Chancery Court alleging that on March 6, 1959, he entered into a contract with the appellant, John E. Yarbro, under the terms of which he sold to Yarbro certain personal property on which he retained a lien for the purchase price which had not been paid.   Although the complaint recites that a copy of the contract was attached to the complaint as exhibit ''A'', no exhibit ''A'' appears in the record before us and no contract is attached to the complaint.   The complaint alleged that the contract was a security arrangement in that Gentry had a first lien on all of the property contained and described in the contract.   The complaint alleged that the defendant, Yarbro, was in default in the terms of the contract, and that the plaintiff elected to foreclose the security transaction. The complaint then prayed judgment against Yarbro in the sum of $10,923.59, plus interest from April 1, 1964, and that if the judgment be not paid within the time fixed by the court, the property be sold at public auction in the manner and under the terms to be fixed by the court.   In the alternative, the complaint prayed that if the court should find ''this is

not a security contract," the court order said contract
canceled and that the defendant be ordered and directed
to deliver to the plaintiff all of the property called for
and described in the contract, together with costs.

Following the complaint in the transcript, appears
a separate mimeographed copy of a sheet of paper con-
taining a list of various items of machinery.   At the
bottom of this list of items a deletion appears in the
mimeographing process, leaving the last item on this
mimeographed list as follows:    "One lease contract,
dated February 4, 1952, covering the following described
real estate:

"The NE Quarter of the SW Quarter of Section
19, Township 17, Range 25, including the location
of the two [2] rock quarries."

No lease contract, or copy thereof, appears in the entire
record.   This mimeographed sheet has a notation in
the margin "Ex. #1" and on the bottom of this sheet
appears a notation as follows:    "This was marked ex-
hibit No. 1 for the defendant-petitioner, to the testi-
cony of Mr. Gentry."   Preceding this notation there is
also what appears to be a reporter's notation, and one
with which we heartily agree, as follows:   "This was
not attached to any pleading, so do not know where it is
supposed to be placed in this record."

It would only prolong this opinion to point out all
the inadequacies of the record, but it appears that on
June 9, 1965, the chancellor signed an order which was
recognized and treated by the parties at the time, as a
judgment for Gentry against Yarbro in the amount of
$11,657.99 and for a foreclosure of a lien against prop-
erty.   This order recites as follows:

"It is, therefore, ordered, adjudged and de-
creed that the equity of redemption of defendant
and all persons claiming under, through or from

him in and to the said property, to-wit: Be and the same hereby is forever barred and foreclosed as well as any rights, equities, title or interest of any such persons to any property into which any part of the value of the above described property has been transformed by 'trade-in,' 'set-off' or in any other manner."

This order then directed the sale of the property by the sheriff and directed the disposition of the proceeds from such sale toward the satisfaction of the judgment.

On July 2, 1965, the chancellor signed an order reciting that by the order of June 9, he had found for the plaintiff in the amount of $11,657.99 upon a contract and vendor's lien set forth in the complaint and the sheriff of Madison County was ordered to proceed to execute on the judgment, and apply the proceeds from sale "First, to the payment of all costs accrued in this action; Second, to the costs and expenses of said sale; Third, to the amount found due to plaintiff aforesaid, with interest and costs as aforesaid, and with attorney's fees in the amount of 10% of the total amount recovered for plaintiff."

The next item in the transcript of record before us is an instrument titled "Writ of Execution" directing the sheriff of Madison County as follows:

"You are commanded that of the estate of John E. Yarbro, you caused to be made the sum of $11,-657.99 which Joseph A. Gentry, late in our court, recovered against him for debt with interest thereon from the 18th day of May, 1965, to June 9, 1965, at the rate of 5% per annum and from June 9, 1965, to date of the decree, which is the basis of this Writ of Execution at the rate of 6% per annum; also, attorney's fee in the amount of 10% of the total amount recovered and the costs of said Joseph A. Gentry in this suit expended; and that you have

said sums of money within sixty (60) days to render to the said Joseph A. Gentry his debt, interest and the costs aforesaid.

"The execution herein is as to that property which was the subject of a contract between Joseph A. Gentry, plaintiff, and John E. Yarbro, defendant, dated March 6, 1959, more specifically the following property, to-wit:"

Then follows a list of machinery and equipment but no lease on real property is mentioned in this instrument. This instrument does show a date of July 3, 1965, and was apparently signed by the clerk of the chancery court of Madison County, but it bears a reporter's notation "no filing mark on this paper."

The record indicates that a public sale was carried out by the sheriff of Madison County at which eighteen items of the personal property contained in the writ of execution were offered for sale, and that Gentry offered the highest and best bid at the sale and purchased the items for $100.00 which was credited on his judgment against Yarbro. This accreditation is only evidenced by an unsigned, and apparently unfiled, bill of sale form prepared with the intention that the sheriff would sign it on September 3, 1965.

Such was the status of the record in this case when on February 5, 1968, a motion was filed by the defendant, Yarbro, stating that on the 9th day of June, 1965, the court made an order directing that certain personal property and one lease contract, dated February 4, 1952, be foreclosed and sold under the direction of the sheriff of Madison County; that in said order no judgment was rendered against defendant in favor of the plaintiff; that such order provided, "if proceeds of sale are not sufficient to make said payments, this decree shall not bar the decree of deficiency judgment against defendant herein." The motion then alleged that the per-

sonal property and lease described in the order were not sold as directed by the court, and that no decree of deficiency judgment was ever rendered against the defendant; that the court should direct the sale of said property so that the court order dated June 9, 1965, could be carried out and the proceeds from such sale could be credited on any sums that defendant may owe to the plaintiff and a deficiency judgment rendered against the defendant for any sum remaining unpaid. This motion concludes as follows:

"Wherefore defendant prays that the court make an order finding (1) that said personal property and lease described in the order of the court dated June 9, 1965, were not sold and should be sold to carry out said order in all respects, (2) that no valid judgment was rendered against the defendant in said order, (3) that by the terms of said order of June 9, 1965, a deficiency judgment was not to be rendered against the defendant until a later date which was not done, as the property was not sold, (4) *that writs of garnishment issued by the Clerk of the Court should be quashed and set aside,* and for all other just and proper relief." (Emphasis supplied.)

Gentry responded to this motion setting out that the order of June 9, 1965, had been carried out by the sheriff in levying on the property under the order of July 2, 1965; that the order had been fully executed by the sheriff; that no mention was made pertaining to the sale of real estate or lease on real estate; that the judgment obtained by Gentry against Yarbro had not been appealed; that the very matters litigated in the original suit are now being sought to be re-litigated by the defendant and the defendant is estopped by judgment in the original suit and by delay in attempting to litigate the matter further. The plaintiff concludes his response to defendant's motion with a one sentence paragraph as

follows: "The plaintiff further sets up the defense by res adjudicata."

The chancellor made a finding of facts indicating that the record in this case was as confusing to him as it is to us, but the chancellor overruled the motion in the following language:

"1. [T]he motion of the defendant asking for sale of the lease contract dated Feb. 4, 1952, covering the following real estate in Madison County, Arkansas, to-wit: NE¼ of SW¼ of Sec. 19, Township 17, Range 25, including the location of 2 rock quarries, is denied and the motion dismissed.

"2. [T]he plea of the plaintiff, Joseph A. Gentry, of estoppel and res adjudicata is sustained.

"It is therefore decreed and ordered that the motion of the defendant, John E. Yarbro, is dismissed for want of equity, with costs to be paid by defendant."

Yarbro appeals to this court and relies on the following points for reversal:

"1. The court erred in allowing the claim of estoppel which was not specially pleaded and proved.

"2. The court erred in allowing the claim of res adjudicata which was not specially pleaded and proved.

"3. The court erred in not ordering the sale of the lease."

We gather from the overall record before us, that Yarbro purchased mining equipment, together with a lease from Gentry, and defaulted in payment when due. Gentry sued and obtained judgment for balance due.

Gentry attempted execution and purchased some of the personal property at a sheriff's sale and credited the sale price on his judgment against Yarbro. Gentry has now sued out a garnishment against funds due Yarbro, and Yarbro contends that Gentry retained a lien on the lease, as well as other property, to secure the sale price and that the lease should be sold and the proceeds credited to the judgment before garnishment should attach. Gentry contends that he now owns the lease as a result of another lawsuit.

The record is not at all clear as to what happened to the alleged lease as between Gentry and Yarbro in this case. The complaint does not mention a lease, and although the complaint does refer to a contract, the contract is not in the record. The order of June 9, 1965, ordering the sale of mortgaged property does not mention a lease and no mortgage appears in the record. There was no lease mentioned in the order of sale and there is nothing in the record before us that would indicate that a lease on real property should have been sold under execution.

Both Mr. Gentry and Mr. Yarbro, however, seem to recognize that a lease on real property constituted a part of what Gentry sold to Yarbro and for which Yarbro had not paid Mr. Gentry when this lawsuit was commenced. Both Gentry and Yarbro seem to recognize that Gentry obtained a judgment against Yarbro which included the amount Yarbro had agreed to pay for the lease, together with other property. On this point Mr. Gentry testified as follows:

"Are you the same Joseph A. Gentry that was in a case against John E. Yarbro, being number 3484 in the Chancery Court of Washington County-Madison County, Arkansas?

A. Yes, sir.

Q. In 1965?

A. Yes, sir.

Q. And Mr. Gentry, in that suit, you were foreclosing, I believe, a lien, was it not?

A. A sales contract.

Q. A sales contract consisting of what?

A. Equipment, mining equipment.

Q. And a lease?

A. Yes.

Q. Was it this particular lease which is mentioned in the pleadings here?

A. Yes.

Q. All right.

A. A lease.

Q. I hand you this document and ask you to tell me what that is?

A. It's a list of the equipment I sold to Mr. Yarbro.

Q. Does it include the lease also down at the bottom: 'The Northeast quarter of the Southwest quarter of Section 19, Township 17, Range 25, including the location of two rock quarries.'

A. I believe that is correct. I wouldn't say for sure. It's the same lease that the Supreme gave back to me. [sic].

Q. It's the same what?

A. The same lease that the Supreme Court said was mine. The same one.

\* \* \*

Q. Do you know who owned that lease at the time you filed this action against Mr. Yarbro?

A. Berry Denny owned the land and Mr. Yarbro was supposed to own the lease.''

Certainly the appellant, Yarbro, by his motion filed in this case, recognizes the lease as being a part of the property he purchased from Gentry and for which the judgment was rendered against him. Gentry contends that he already owns the lease which Yarbro contends should be sold and the proceeds applied on Gentry's judgment against him.

The mandate and decision of this court in *Gentry* v. *Holland,* 243 Ark. 172, 419 S.W. 2d 130, was offered in evidence by the appellee, Gentry, and was made a part of the record in this case. Extrinsic evidence was offered to the effect that the lease involved in the *Holland* case is the same lease that is involved here, so we conclude that our decision in the *Holland* case is res judicata only as to the identity of the same lease in both cases. (*Hastings* v. *Rose Courts,* 237 Ark. 426, 373 S.W. 2d 583). *Gentry* v. *Holland,* as the decision points out, was a suit by Holland to quiet his title, the lease here involved being the primary cloud complained of. Holland, as fee owner, claimed forfeiture of the lease for default in monthly rental payments. The chancellor held that the mining lease had forfeited to the fee owner in that case and we reversed, holding that Gentry was the owner of the lease.

As to the lease in the *Holland* case, we said:

"Gentry sued Yarbro and on June 9, 1965, a judgment was entered in that case in the Madison Chancery Court. All rights of Yarbro in and to the lease were cancelled. The personal property was ordered sold to apply on Gentry's judgment. * * * The Madison Chancery Court, in an action separate from the one before us, determined that

Gentry was entitled to be reinvested with that which he conveyed to Yarbro. * * * We affirm the trial court's findings in all respects except as to the lease in question, title to that instrument being vested in Gentry."

Our decision in the *Holland* case indicates that it may have been partially based on the record in the case now before us, but the case now before us does not contain any part of the record upon which the *Holland* decision was based. We do not take judicial notice of records of evidence in other cases in deciding a case that is before us. *Murphy* v. *Citizens' Bank of Junction City*, 82 Ark. 131, 100 S.W. 894, 11 L.R.A. (n.s.) 616, 12 Ann. Cas. 535; *Adams* v. *Billingsley*, 107 Ark. 38, 153 S.W. 1105; *McCoy* v. *Anthony Land Co., Inc.*, 230 Ark. 244, 322 S.W. 2d 439; *Gibson* v. *Buckner*, 65 Ark. 84, 44 S.W. 1034; *Hall* v. *Cole*, 71 Ark. 601, 76 S.W. 1076.

As we view the case now before us, res judicata as to Gentry's ownership of the lease is beside the point. The actual difference between Yarbro and Gentry, is not which of them owns the lease. The question is not whether the lease reverted to Gentry by cancellation of a contract with Yarbro under the terms of the contract, or under a court order. The question is not whether title to the lease vested in Gentry through foreclosure of his "contract" or mortgage against Yarbro, or because of Yarbro's default in diligence in the *Holland* case. The actual question as between Gentry and Yarbro as we see it, is whether Gentry's judgment against Yarbro includes the sale price of the lease, and if so, whether the judgment has been credited with the value of the lease.

We are of the opinion that if Gentry sold the lease to Yarbro and retained a lien on it as security for its purchase price; and if the price Yarbro agreed to pay for the lease is included in the judgment against Yarbro for its purchase price, then such judgment should be credited with the value of the lease.

We conclude, therefore, that this case should be remanded to the trial court for a determination of whether the value of the lease was included in the judgment Gentry obtained against Yarbro, and if the value of the lease was so included, the value of the lease as of the date of the judgment, should be determined and credited on the judgment. This case is remanded to the Madison County Chancery Court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Brown and Byrd, JJ., dissent.